United States District Court
Southern District of Texas
**ENTERED**
March 01, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARTURO SANCHEZ ALMAGUER, | § | |
|     Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-018 |
| | § | |
| LORIE DAVIS, Director, Texas Department | § | |
| of Criminal Justice, Correctional Institutions | § | |
| Division, | § | |
|     Respondent. | § | |
| | § | |

## REPORT AND RECOMMENDATION

Petitioner Arturo Sanchez Almaguer, a state prisoner proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Docket Entry No. 1.)  In 2014, Petitioner stood trial in Hidalgo County, Texas, on capital murder charges stemming from the 1988 shooting deaths of Evan and Wilda Squires, who were killed in their home during a burglary.  Although the Squires' murder was initially unsolved and became a "cold case," Petitioner was later implicated by DNA evidence, which the State presented at his trial.  The jury convicted Petitioner on three counts of capital murder, one of which was dismissed before sentencing.  The trial judge sentenced Petitioner to two concurrent life sentences.  After unsuccessfully availing himself of state appellate and post-conviction review, Petitioner now seeks federal habeas corpus relief.

Petitioner's principal claim is that there is insufficient evidence to support the verdicts. He also claims that the trial court violated his right against double jeopardy by dismissing count one after the jury had returned a verdict of guilty and that appellate counsel rendered ineffective assistance by failing to raise the double-jeopardy issue on direct appeal.  Respondent has filed a

1

motion for summary judgment, contending that Petitioner fails to show entitlement to relief under the stringent standards of review set forth in the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Docket Entry No. 8.)

After carefully considering the parties' pleadings and the state court record in light of the applicable law, the undersigned concludes that Petitioner has not shown a basis for federal habeas corpus relief. Petitioner has failed to show that the state court's decision denying his challenge to the sufficiency of the evidence was contrary to or an unreasonable application of *Jackson v. Viriginia*, 443 U.S. 307 (1979). The strong DNA evidence, together with the other evidence presented at trial, supports the state court's conclusion that rational jurors could have found proof of Petitioner's guilt beyond a reasonable doubt. Similarly, Petitioner has failed to show that the state court's denial of relief on his double jeopardy claims was contrary to or an unreasonable application of clearly established federal law. Accordingly, for the reasons explained further below, the undersigned recommends that the District Court grant Respondent's motion for summary judgment and deny habeas relief. It is further recommended that the Court not issue a certificate of appealability.

## I. BACKGROUND

### A.  State Court Proceedings

Petitioner is currently in the custody of the Texas Department of Criminal Justice pursuant to two judgments from the 206th Judicial District Court of Hidalgo County, Texas, in criminal cause number CR-1214-12-D. (Docket Entry No. 10-18 at 27-32.)[1]

Late in the evening on November 12, 1988, Evan Squires and his wife, Wilda Squires, were found shot to death in their mobile home in Weslaco, Texas. (Docket Entry No. 10-19 at

---

[1] Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF when the relevant document is opened.

28.)   This case remained opened for many years and eventually became a "cold case." Subsequent DNA testing implicated Petitioner in the crime.  *See Almaguer v. State*, 13-14-00312-CR, 2015 WL 5602267, at *1 (Tex. App.—Corpus Christi June 25, 2015, pet. ref'd) (not designated for publication).  In January 2012, Petitioner was indicted on three counts of capital murder for the deaths of Evan and Wilda Squires.  (Docket Entry No. 10-19 at 28.)  Count one alleged that Petitioner caused the death of the two individuals, Evan and Wilda Squires, in the same transaction.  *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A).  Count two alleged that Petitioner intentionally caused the death of Evan Squires by shooting him to death with a firearm in the course of committing or attempting to commit the offense of burglary of Mr. Squires' habitation. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).  Count three was the same charge as count two, except the decedent was Wilda Squires.  *See id.*  Petitioner pleaded not guilty and proceeded to a jury trial.  Petitioner was represented by two attorneys at trial.  (Docket Entry No. 10-19 at 285–86.)

Texas's Thirteenth Court of Appeals provided the following summary of the facts presented at trial:

> On November 12, 1988, Officer Roberto Moreno of the Weslaco Police Department responded to a report of shots fired at the Magic Valley Trailer Park in Weslaco, Texas. Upon his arrival, residents of the trailer park directed him to the Squires home. Inside the trailer, he discovered a male and a female body on the floor. Officer Moreno identified the bodies as those of Evan and Wilda Squires. Both appeared to have been shot and neither was responsive. Both died as a result of the gunshot wounds. Officer Moreno and other investigators who were called to the scene observed a pile of human feces on the carpet in one of the rooms, as well as a pair of jean shorts covered in feces. They also observed a box of silverware lying on the floor, a machete on a chair, and a radio that appeared to have been wrapped up. Officer Patsy Pemelton observed a trail of clothes leading from the side door of the trailer down to a drain ditch some distance away. At the end of the trail, she found a bag containing clothes as well as a torn shirt that was also covered in feces. Officer Pemelton took these items into evidence.

       In 2005, the Texas Department of Public Safety ("DPS") DNA lab in McAllen, Texas, obtained partial DNA profiles from the fecal stains on both the torn shirt found at the end of the trail and the jean shorts found at the Squires' home. In 2012, the DPS DNA lab received a known DNA sample from appellant. The lab compared the DNA profiles from the shirt and jean shorts to appellant's DNA profile. DNA analyst Alejandro Madrigal testified that appellant could not be eliminated as a potential contributor to the DNA profiles found on the clothing.

*Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *1.

On February 3, 2014, the jury returned three separate verdicts finding Petitioner guilty on each of the three counts in the indictment. (Docket Entry No. 10-2 at 55.) On February 4, 2014, sentencing was held. At the commencement of the sentencing hearing, upon motion by the State and with no objection by Petitioner, the trial court dismissed count one on the basis of double jeopardy. (Docket Entry No. 10-3 at 4; No. 10-19 at 30.) The trial court then sentenced Petitioner to two terms of life imprisonment, to run *consecutively*. (Docket Entry No. 10-3 at 6.) On February 26, 2014, a new sentencing was held because the State filed a motion to vacate the consecutive life sentences for counts two and three, as it was erroneous to run the sentences consecutively under the statute that applied to the offenses committed in 1988. (Docket Entry No. 10-4 at 4–6.) The trial court vacated the sentences and sentenced Petitioner to two terms of life in prison, to run *concurrently*. (*Id.*)

    As previously indicated, Petitioner filed a direct appeal. He raised two principal issues, including the argument that the evidence was legally insufficient to support the jury's verdict. The Thirteenth Court of Appeals affirmed the judgment of the trial court. *Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *5. The Texas Court of Criminal Appeals ("TCCA") denied his petition for discretionary review ("PDR"). Petitioner's request for rehearing on his PDR was also denied.

Petitioner later filed a pro se state application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  On November 2, 2016, the TCCA denied his claims without written order.  (Docket Entry No. 10-13 at 1.)

Petitioner then promptly filed his federal application pursuant to 28 U.S.C. § 2254. Respondent does not contend that the petition is time barred or that any of Petitioner's claims are unexhausted.

## B.    Federal Review

Petitioner proceeds pro se.  Pro se pleadings are held to less stringent standards than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Pleadings filed by a pro se litigant are entitled to a liberal construction.  *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dep't*, 84 F.3d 469, 473 n.16 (5th Cir. 1996)).

Consistent with Respondent's construction of Petitioner's claims, which Petitioner does not dispute, the undersigned construes Petitioner's pleadings to raise the following grounds for relief:

(1) The DNA evidence is insufficient to support Petitioner's capital murder convictions, and the Thirteenth Court of Appeals violated his rights by reviewing his sufficiency-of-the-evidence claim under an improper standard (the "hypothetically correct jury charge" standard) based on jury instructions not presented in his case (instructions premised on Texas's law-of-the-parties doctrine);

(2) Because the trial court lacked the authority to dismiss the first count of capital murder, Petitioner stands convicted of all three counts of capital murder in violation of the constitutional prohibition against double jeopardy;  and,

(3) Appellate counsel rendered ineffective assistance by failing to raise the double jeopardy violation on direct appeal.

Respondent filed an answer and motion for summary judgment.  (Docket Entry No. 8.) Petitioner filed a reply addressing Respondent's arguments.  (Docket Entry No. 11.)  In it, Petitioner essentially re-urges the merits of his claims, but he also argues that he meets AEDPA's

stringent standards and that de novo review should apply to one or more of his claims.   This matter is ripe for adjudication.

## II.  STANDARD OF REVIEW

The writ of habeas corpus provides an important, but narrow, examination of a prisoner's conviction and sentence.  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).  "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens."  *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined").  The States "possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights."  *Engle v. Isaac*, 456 U.S. 107, 128 (1982).

If a state prisoner has presented his federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review.  "[T]ime and again," the Supreme Court "has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'"  *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)).  Under AEDPA's rigorous standard of review, a petitioner may secure federal habeas relief only after showing that the state court's rejection of his claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

Petitioners arguing legal error in state court decisions must comply with § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Gray v. Epps,* 616 F.3d 436, 439 (5th Cir.2010) (citing *Williams v. Taylor,* 529 U.S. 362, 404–08 (2002)). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). In contrast to "ordinary error correction through appeal," AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods*, 135 S. Ct. at 1376 (quotation omitted). A petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams*, 529 U.S. at 413. "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

A petitioner challenging the factual basis for a state decision must show that it was an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). State court findings are "presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When faced with a silent or ambiguous state habeas decision, the federal court should look through to the last clear state decision on the matter."). Thus, when the TCCA summarily rejects a prisoner's claim, federal courts can "ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). AEDPA requires federal courts to defer to the TCCA's summary decision to deny relief. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013) (observing that AEDPA deference is proper even in "instances in which a state court may simply regard a claim as too insubstantial to merit discussion").

Petitioner's grounds for relief will be considered in light of these standards.

## III. ANALYSIS

### A.    Sufficiency of the Evidence (Claim One)

Petitioner claims that there is insufficient evidence to support the two capital murder convictions. His argument takes two forms. First, he argues that the DNA evidence is not sufficient to connect him to the murders. Second, he also contends that the Thirteenth Court of Appeals improperly reviewed the sufficiency of the evidence under a "hypothetically correct jury

charge" standard based on Texas's law-of-the-parties doctrine, which was not included in the jury instructions in his case.

In *Jackson v. Virginia,* 443 U.S. 307 (1979), the Supreme Court articulated the constitutional due process standard that applies in determining whether a criminal conviction is supported by sufficient evidence. Under that standard, a state prisoner is entitled to habeas relief only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324. The evidence must be reviewed "in the light most favorable to the prosecution." *Id*. at 319.

In addition, AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court has explained:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

Here, the decision by the Thirteenth Court of Appeals reflects that the court properly reviewed the sufficiency of the evidence under *Jackson v. Viriginia*.[1]  *See Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *1–2.  The state court dedicated an entire section of the

---

[1] Because the TCCA summarily denied Petitioner's state habeas application, it is appropriate to "look through" this "unexplained denial and evaluate the last reasoned state court decision." *Bledsue*, 188 F.3d at 256; *see also Ylst*, 501 U.S. at 804; *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) ("Under AEDPA, 'we review the last reasoned state court decision.'") (citation omitted). Here, the last reasoned state court decision regarding the sufficiency of the evidence was the ruling by the Thirteenth Court of Appeals on Petitioner's direct appeal.

opinion to the applicable law and standard of review for this claim.  *Id.*  The state court correctly explained that, under *Jackson*, the "standard for reviewing the existence of legally sufficient evidence is whether any rational trier of fact could have found all the essential elements of the charged offense proven beyond a reasonable doubt" and that the court views "the evidence in the light most favorable to the verdict."  *Id.*

*Jackson* requires that the sufficiency-of-evidence review be conducted "with explicit reference to the substantive elements of the criminal offense as defined by state law."  443 U.S. at 324 n.16.  The Thirteenth Court of Appeals did so, explaining the elements of capital murder under Texas law, which in this case required the State to prove the elements of burglary and murder (which the court also explained).  *See Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *2-3.

As Respondent correctly points out, the Thirteenth Court of Appeals analyzed the sufficiency of the evidence under different scenarios.  First, the court turned to the evidence supporting the elements for capital murder predicated on the burglary (counts two and three), which were based on Petitioner being an individual actor.  The court analyzed the sufficiency of the evidence as follows:

### 1.  Burglary

Here, the State was required to prove that appellant had entered the Squires' home without their consent to commit a felony. *See* Tex. Penal Code Ann. § 30.02. The jury heard evidence that the Squires appeared to have been awakened in the middle of the night and at a time they were usually already in bed. The evidence showed that appellant's DNA was discovered at the Squires' home in the form of feces on the carpet and on more than one article of clothing. An investigator testified that the feces appeared to be fresh because the odor strongly permeated the scene when he arrived a few minutes after the shots were fired. Furthermore, silverware and other valuables were found in what appeared to be odd places around the home and outside. A radio appeared to be wrapped up as if in preparation of being moved elsewhere and a machete had been placed on a chair. Appellant's DNA placed him inside the Squires' home and at the end of the

trail of clothing outside the home. Therefore, the evidence could have permitted the jury to make a logical inference as to appellant's unlawful presence in the Squires' home that night as well as his attempt to commit a burglary. *See id.*; *Matamoros v. State,* 901 S.W.2d 470, 474 (Tex. Crim. App. 1995) (holding that the defendant committed burglary because the evidence was sufficient to establish that the victim was sleeping in his bed when the defendant entered the house without his victim's consent and the defendant surprised and killed him).

### 2. Murder

To prove the offense of capital murder, the State was required to show that appellant intentionally or knowingly shot the Squires and caused their deaths. *See id.* § 19.03(a)(2). Appellant argues that no direct or circumstantial evidence was presented that could prove he intended to cause the death of either Squires. Appellant contends that the intent element for capital murder was not proven by the State because the State did not present any evidence that he harbored ill will towards them and the record contained no evidence of appellant's fingerprints at the crime scene or eye witnesses who could place him near the scene.

However, contrary to appellant's contention that the record is bereft of any evidence to infer that he possessed the requisite intent to commit murder, the evidence showed that the Squires were shot at a close range of between two and four feet. At such close proximity to the victims, the law presumes an intent to kill. *See Sholars v. State,* 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.); *Childs v. State,* 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.). Furthermore, the bullet that exited Mr. Squires' body was lodged into the wall opposite the bathroom, and Mr. Squires fell forward into the bathroom. Such placement of the bullet and his body indicates that the shooter was in the bathroom when he shot Mr. Squires. The jury could logically infer from this evidence and the presence of his feces elsewhere in the house that appellant was the shooter because he was unable to control his bowels that night and was in the bathroom when he shot Mr. Squires.

*Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *2–3.

In addition, the Thirteenth Court of Appeals reviewed the sufficiency of the evidence for the same convictions under a "hypothetically correct jury charge" standard, which would have permitted the jury to convict Petitioner as a party to the offense.  The state court wrote as follows:

11

### 3.  Party to the Offense

The evidence also indicates that multiple parties participated in the burglary. Under a hypothetically correct jury charge, the jury could convict appellant if it found that he was present at the commission of the offense and he encouraged or aided another person in intentionally causing the death of the Squires. *See* Tex. Penal Code Ann. § 7.02(a)(2); *King v. State,* 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). In reviewing the sufficiency of the evidence to support appellant's participation as a party to the offense, we may consider evidence occurring before, during, and after the commission of the offense and may rely on his actions showing an understanding and common design to do the prohibited act.  *Gross v. State,* 352 S.W.3d 238, 240 (Tex. App.—Houston [14th Dist.]), *aff'd,* 380 S.W.3d 181 (Tex. Crim. App. 2012).

Appellant argues that while the evidence shows that someone intentionally and knowingly caused the deaths of the Squires, the evidence does not prove that appellant was present at the time the murders were committed. However, there were two sets of footprints found in the Squires' home. Appellant's DNA establishes that he was there shortly before the first police officer arrived because the fecal matter was still fresh. As previously mentioned, his DNA was also found at the end of the trail leading from the Squires' home to a ditch some distance away. The pajamas found outside on the trail matched the pajamas of the victim left inside the home, further indicating a burglary was being committed. Finally, neither Mr. nor Mrs. Squires owned any firearms. The jury could reasonably infer from such evidence that appellant was present at the commission of the burglary and that he or his accomplice brought a firearm with them with the intent of murdering the inhabitants of the residence should they interfere with the burglary. *See Gardner,* 306 S.W.3d at 287.

*Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *3.  After reviewing the evidence under the different scenarios, the state court concluded that "the evidence presented was legally sufficient to support appellant's conviction."  *Id.*

As the trial record reflects, and as the Thirteenth Court of Appeals' description of the evidence shows, the state court considered all of the evidence in a light most favorable to the prosecution or verdict and explained reasonable inferences that could be drawn from the evidence.  *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'");  *Jackson*, 443

U.S. at 326 (explaining that the evidence is viewed in the light most favorable to the prosecution and that, when there are conflicting inferences, a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").  The state court thus correctly applied *Jackson v. Virginia* in assessing the sufficiency of the evidence.  Petitioner nonetheless contends that the evidence was insufficient to support his convictions in two ways.

    1.  <u>The DNA Evidence</u>

First, Petitioner focuses on the DNA evidence.  Petitioner asserts that the DNA is only a partial match, which means the evidence is insufficient because the DNA is too weak to place him at the scene of the crime with any certainty and is not strong enough to support the verdicts as a general matter.  According to Petitioner, the DNA evidence showed nothing more than that the person whose feces was found in the Squires' home was a male.

Petitioner's argument misconstrues the evidence and misapplies *Jackson v. Virginia*.  The record reflects that, at trial, a properly-qualified DNA analyst, Alejandro Madrigal, explained the DNA evidence, testified about the match between the DNA profile derived from the fecal matter found on the clothes at the crime scene (both inside and outside of the home) and Petitioner's DNA profile, explained the probability figures associated with the profiles (*i.e.,* the strength of the match), and stated that the DNA evidence showed that Petitioner could not be excluded as a potential contributor to the DNA profiles found on the clothing.  (Docket Entry No. 10-1 at 21–72.)  The Thirteenth Court of Appeals referred to and relied on the DNA analyst and the DNA evidence in its resolution of Petitioner's insufficiency-of-evidence claim.  *Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *1–3.

Viewing the evidence in the light most favorable to the verdict, the Thirteenth Court of Appeals found that the "evidence showed that [Petitioner's] DNA was discovered at the Squires' home" and that "DNA placed him inside the Squires' home." *Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *2. The Court's assessment of the DNA evidence is supported by the trial record. Mr. Madrigal testified that the DNA analysis of the feces stains on the shorts found inside the Squires' home and the stains on the shirt found near the home were both consistent with Petitioner's DNA profile. (Docket Entry No. 10-1, at 35 (trial transcript).) As to the DNA analysis of the stains on the shorts (found inside the home), "the probability of selecting … an unrelated person at random who could be the source of this DNA profile is approximately one in 138.1 million for Caucasians, one in 80.52 million for Blacks and one in 89.13 million for Hispanics."[2] (*Id.* at 38.) Such evidence provided a sufficient basis for a rational trier of fact to conclude that Petitioner was in the Squires' home.[3] Petitioner has thus failed to show that the

---

[2] The probabilities were even more remote with regard to the DNA profile from the shirt (found in the ditch at the end of a trail of items leading from the Squires' home). The probability of selecting an unrelated person at random who could be the source of the DNA profile from the shirt is approximately one in 9.699 quadrillion for Caucasians, one in 13.79 quadrillion for Blacks and one in 7.424 quadrillion for Hispanics." (*Id.*)

[3] The Thirteenth Court of Appeals implicitly found that the DNA evidence, standing alone, was sufficient to establish Petitioner's presence in the Squires' home. Such a conclusion is consistent with Texas law. The Texas Court of Criminal Appeals has long held that DNA evidence is admissible to prove identity. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App. 1992). Other Texas courts have concluded that DNA evidence alone, without additional circumstantial evidence, may be sufficient to establish identity. *See King v. State*, 91 S.W.3d 375, 381 (Tex.App.-Texarkana 2002, pet. ref'd); *Roberson v. State*, 16 S.W.3d 156, 168-72 (Tex.App.-Austin 2000, pet. ref'd); *see also Allen v. State*, No. 05-11-00056-CR, 2012 WL 2106530, at *2 (Tex.App.-Dallas June 12, 2012, pet. ref'd) ("We can discern no reason why we should not follow *Roberson* and hold that a conviction can be sustained on the sole testimony of a DNA expert, which establishes identity beyond a reasonable doubt.") (unpublished). Courts in other jurisdictions have come to the same conclusion; for example, "under New York law, DNA evidence—standing alone and uncorroborated by any other evidence—is sufficient to prove a defendant's guilt beyond a reasonable doubt." *Warney v. City of Rochester,* 536 F.Supp.2d 285, 296 (W.D.N.Y. 2008) (inside quotes and citations omitted). Such reliance on DNA evidence is not contrary to clearly established federal law as determined by the U.S. Supreme Court. To the

state court unreasonably applied *Jackson v. Virginia* in assessing the sufficiency of the DNA evidence.  *See Cavazos*, 565 U.S. at 2 (explaining that "*Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial" and that a "reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury").

### 2.  The Law of the Parties

Petitioner's second insufficiency argument is that the Thirteenth Court of Appeals improperly applied the "law of the parties" in assessing the sufficiency of the evidence under a "hypothetically correct jury charge."  As Respondent correctly explains, the "hypothetically correct jury charge" standard is found in Texas criminal case law, but the Fifth Circuit has held that it does not apply on federal habeas review in determining the constitutional sufficiency of the evidence.  *See Bledsue*, 188 F.3d at 260.  Respondent and Petitioner agree that the jury was not instructed on the law of the parties.  (*See* Docket. Entry No. 8 at 13.)

While it is true that the Thirteenth Court of Appeals included in its opinion a discussion of the sufficiency of the evidence in the context of the law-of-the-parties doctrine, it does not follow that this entitles Petitioner to federal habeas relief.  The court was required by state law to consider the sufficiency of the evidence under a hypothetically correct jury charge.  However,

---

contrary, noting "several major advances in DNA technology," the Supreme Court has observed that "[m]odern DNA testing can provide powerful new evidence unlike anything known before. … DNA testing has exonerated wrongly convicted people, and has confirmed the convictions of many others."  *Dist. Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 62 (2009); *see also McDaniel v. Brown*, 558 U.S. 120, 132 (2010) (holding that even under the probability of a DNA match between two brothers of 1 in 132, "a rational jury could consider the DNA evidence to be powerful evidence of guilt").  Indeed, as one federal appeals court has observed, "DNA is the most reliable evidence of identification—stronger even than fingerprints or photographs."  *Green v. Berge*, 354 F.3d 675, 679 (7th Cir.2004).

the structure and substance of the opinion show that the law of the parties was an alternative basis for concluding that the evidence was sufficient to support Petitioner's capital murder convictions. As shown by the excerpts of the opinion quoted earlier, the state court had first discussed in detail the sufficiency of the evidence to satisfy the elements of burglary and murder as to Petitioner individually (without regard to the law of the parties). *Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *2-3. As to burglary, the court of appeals concluded that "the evidence could have permitted the jury to make a logical inference as to [Petitioner's] unlawful presence in the Squires' home that night as well as his attempt to commit a burglary." *Id*. at *2. As to murder, the court concluded that the "jury could logically infer from this evidence [including the trajectory of the bullet that killed Mr. Squires] and the presence of his feces elsewhere in the house that appellant was the shooter because he was unable to control his bowels that night and was in the bathroom when he shot Mr. Squires." *Id*. at *3. Neither of these conclusions was based in any way on the law of the parties. They both reflect a the proper analysis of the sufficiency of the evidence against Petitioner individually under *Jackson v. Virginia*. *See Parker*, 567 U.S. at 42 (noting that the state court's initial assessment of the evidence and reliance upon a particular state case might be "relevant" if it formed the sole basis for the denial of the petitioner's sufficiency-of-the-evidence claim, but concluding that the record showed the state court had otherwise disposed of the petitioner's sufficiency-of-the-evidence claim properly).

Even assuming that the state court's separate analysis of the burglary and murder evidence was somehow tainted by its later discussion of the evidence under the law-of-the-parties theory, Petitioner would still not be entitled to relief on his insufficiency claim. In *Bledsue*, the Fifth Circuit explained the approach a federal court should take where the state

16

court has decided an issue based on a hypothetically correct jury charge: "[F]ederal habeas courts should independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." 188 F.3d at 260 (emphasis in original).

Following this approach yields the same result as that reached by the state court. In analyzing the relevant statutes, the indictment, and the jury charge in Petitioner's case, the essential elements required by the *Jackson* sufficiency analysis were correctly described by the Thirteenth Court of Appeals as follows:

> Here, the State was required to prove that appellant murdered the Squires in the course of committing or attempting to commit burglary. *See* Tex. Penal Code Ann. § 19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *See id.* A person commits burglary if: (1) without consent of the owner, (2) the person enters a habitation (3) with intent to commit a felony, theft, or assault. *See id.* § 30.02 (West, Westlaw through Chapter 46 2015 R.S.); *Gardner v. State,* 306 S.W.3d 274, 287 (Tex.Crim.App.2009) (stating that appellant committed burglary when he entered the victim's home without her effective consent and committed murder).

*Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *2.

Viewing the evidence in the record in the light most favorable to the verdicts, a rational trier of fact could certainly have agreed with the jury in Petitioner's case that all the elements of capital murder were proven beyond a reasonable doubt. As the Thirteenth Court of Appeals found, and as is confirmed by the trial record, the evidence supporting the jury's verdicts—and reasonable inferences drawn from that evidence—include the following:

- Weslaco police officers arrived at the Squires' trailer home within a few minutes after screams were heard and shots were fired;

- A neighbor saw a man fleeing from the Squires' home;

- Officers found the bodies of Evan and Wilda Squires, who had both been killed by gunshot wounds;

- Powder burns on the Squires' bodies showed that they were shot at close range (within a few feet);

- Fresh feces was found in one of the rooms on the floor and on a pair of shorts;

- The DNA evidence obtained from the feces showed that Petitioner was in the Squires' home;

- The trajectory of the bullet that killed Evan Squires and the position of his body showed that the shot had come from the bathroom;

- Petitioner was unable to control his bowels and went into the bathroom where he encountered Evan Squires and shot him;

- Wilda Squires was also shot at close range, and the telephone was off the hook on a kitchen counter near where her body was found;

- Petitioner entered the Squires' home late at night after they had gone to sleep;

- Valuables such as silverware and a radio were out of place within the home, reflecting an attempted burglary;

- A trail of clothing items (taken from the Squires' home) led away from the trailer home to a drainage ditch;

- Still unable to control his bowels, Petitioner left his feces on a torn shirt (as shown by DNA analysis) that was found at the drainage ditch; and

- Petitioner had stolen Wilda Squires' purse, which was found farther along the same route that he had taken in fleeing from the home.

As can be seen, the evidence at Petitioner's trial was constitutionally sufficient under *Jackson* to establish all of the essential elements of his capital murder convictions. *See Coleman*, 566 U.S. at 655 ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") The fact that Petitioner's case involved a substantial amount of circumstantial evidence does not change this conclusion. "Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—

from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster Cnty., N.Y. v. Allen,* 442 U.S. 140, 156 (1979).

In sum, both of Petitioner's theories in support of his insufficiency-of-evidence claim lack merit.   Petitioner has failed to show that the state court erred in applying *Jackson v. Virginia*, let alone that its decision was "objectively unreasonable."   *See Woods*, 135 S.Ct. at 1376 (to satisfy AEDPA's "unreasonable application" standard, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice").   Because Petitioner has failed to show that the state court unreasonably applied clearly established federal law, the Court should reject his claim challenging the sufficiency of the evidence to support his capital murder convictions.

## B.      Double Jeopardy (Claim Two)

Petitioner argues that the trial court lacked the authority to dismiss the first count of capital murder, and, as a result, that he actually stands convicted of all three counts of capital murder in violation of the constitutional prohibition against double jeopardy.   Petitioner raised this claim in his state application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure, which the TCCA denied without written order.   (Docket Entry No. 10-13 at 1.)

In his original federal petition, Petitioner fails to explain why the trial court lacked authority to dismiss the first count of capital murder after the jury rendered findings of guilt on all three counts.   In his reply to Respondent's motion for summary judgment, Petitioner cites two Texas cases for the proposition that a Texas trial court in a criminal case cannot set aside a jury's verdict because a trial court is prohibited from entering a judgment notwithstanding the verdict

(JNOV) in a criminal case.  (Docket Entry No. 11 at 5.)  Those cases address whether the trial

court's actions were procedurally correct under state law.[4]

In considering Petitioner's double jeopardy claim on federal habeas review, it is

unnecessary to resolve whether or not the state trial court had authority under Texas law to

dismiss count one of the indictment.  Even assuming (without deciding) that the state trial court's

ruling was unauthorized as a matter of state criminal procedure, it would not provide Petitioner

with a basis for federal habeas relief.  "A federal court may not issue the writ on the basis of a

perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v.

McGuire*, 502 U.S. 62, 67–68 (1991) (stating that it is not "the province of a federal habeas court

to reexamine state-court determinations on state-law questions").  Instead, the issue for federal

habeas review is whether the TCCA's denial of Petitioner's double jeopardy claim was contrary

to or an unreasonable application of clearly established *federal* law.  28 U.S.C. § 2254(d)(1).

The record reflects that, prior to trial, defense counsel moved to dismiss on double

jeopardy grounds counts two and three, which alleged that Petitioner murdered Evan and Wilda

Squires in the course of committing or attempting to commit burglary.  (Docket. Entry No. 9-5 at

106.)  On January 27, 2014, the trial court denied the motion.  (Docket Entry No. 9-5 at 112.)

On February 3, 2014, the jury returned a verdict of guilty on all three counts, as charged in the

indictment.  (Docket Entry No. 10-2 at 55.)  On February 4, 2014, sentencing was held.  Prior to

---

[4]   Petitioner cites *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996), and *Combes v.
State*, 286 S.W.2d 949, 950 (Tex. Crim. App. 1956).  In *Combes*, the TCCA held that the trial
court erred in entering judgment without including the jury's assessment of confinement in jail as
part of the punishment.  286 S.W.2d at 950.  In *Savage*, the TCCA found that the trial court
improperly granted the defendant's motion for a JNOV after the jury had found him guilty.  933
S.W.2d at 499.  In reaching this conclusion, the TCCA relied on the Texas Code of Criminal
Procedure.  *Id.*  The trial court actions at issue in *Savage* and *Combes* are procedurally
distinguishable from the trial court's dismissal of count one on double jeopardy grounds in
Petitioner's case.  In any event, as discussed above, federal habeas relief is not available to
remedy alleged violations of state law.

the commencement of the sentencing itself, the trial court granted the State's motion to dismiss count one on the basis of double jeopardy.[5]  (Docket Entry No. 10-3 at 4.)  Defense counsel told the trial court that the defense had no objection to the dismissal.  (*Id.*)  Thus, the "final" criminal judgments reflect that Petitioner was found guilty on counts two and three by a jury and was sentenced to life imprisonment for each count, with the sentences to run concurrently.  (*See* Docket Entry No. 9-5, at 132-37.)  Petitioner's double jeopardy claim must be evaluated in light of the actual judgments in his case—not a hypothetical judgment based on his theory that the dismissal of count one was unauthorized under Texas law.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'"  *Jones v. Thomas*, 491 U.S. 376, 380–81 (1989).  "The Clause affords three protections to the criminal defendant."  *Id.* "The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction."

---

[5]  This ruling was consistent with the TCCA's decision in *Ramirez v. State*, AP-75,167, 2007 WL 4375936, at *5 (Tex. Crim. App. Dec. 12, 2007) (unpublished).  As Respondent notes, in that case the TCCA held that a double jeopardy violation resulted when the defendant was convicted and sentenced to multiple counts involving section § 19.03(a)(2) and (a)(7), when those counts arose from the same conduct on the same date and involved the same victims.  *Id.* at *5.  *Ramirez* involved the same statute and subsections as Petitioner's case.  The TCCA explained the double jeopardy analysis as follows:

> Section 19.03 of the Texas Penal Code lists several different ways to commit the offense of capital murder. Appellant was convicted and sentenced to death in two separate counts for murder in the course of robbery under Section 19.03(a)(2) and for murdering more than one person during the same criminal transaction under Section 19.03(a)(7).  Both counts, however, arise from the same conduct on the same date involving the same victims. The same evidence that formed the basis for "the same criminal transaction" element in Count One also formed the basis for the robbery element in Count Two. There is only one "allowable unit of prosecution" under the statute in this circumstance.  *See Sanabria v. United States,* 437 U.S. 54 (1978).  Thus, we agree that appellant was subjected to multiple punishments for the same offense in violation of the federal and state constitutional protections against double jeopardy.

*Id.*, at *5.

*Id.* The third protection is "against 'multiple punishments for the same offense' imposed in a single proceeding." *Id.* Only the third protection is relevant here.

Petitioner was tried on three counts at the same trial, but count one was dismissed after the jury returned its verdict of guilty for the three counts. Counts two and three are predicated on the same statute and subsection. Count two alleged that Petitioner intentionally caused the death of Evan Squires by shooting him to death with a firearm in the course of committing or attempting to commit the offense of burglary of Mr. Squires' habitation. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). Count three alleged that Petitioner intentionally caused the death of Wilda Squires by shooting her to death with a firearm in the course of committing or attempting to commit the offense of burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

As Respondent correctly points out, counts two and three are predicated on different "units"—to wit, each victim. *See, e.g., United States v. Evans*, 854 F.2d 56, 59 (5th Cir. 1988) (explaining that, "[w]hen a single statutory provision is violated, the relevant inquiry is …'the allowable unit of prosecution'") (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218 (1952)); *Shelby v. State*, 448 S.W.3d 431, 439 (Tex. Crim. App. 2014) ("The allowable unit of prosecution for an assaultive offense in Texas is each victim."). Petitioner is serving one life sentence for count two and one life sentence for count three. *See Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature."); *Jones*, 491 U.S. at 382 & n.2 (explaining that, because the duplicitous conviction and sentence were vacated, the petitioner was "now serving only a single sentence for a single offense," and the petitioner had, "[u]nder any view of the substantive content of the double

22

jeopardy bar against multiple punishments," "every benefit the Clause affords").  Broken down like this, it is apparent why the TCCA denied relief on this claim under the U.S. Constitution: there was no double jeopardy violation for the state habeas court to redress.

The TCCA reasonably applied federal constitutional law in determining that Petitioner's capital murder convictions on count two and three do not offend the Double Jeopardy Clause. Moreover, the Supreme Court has never held that a double jeopardy violation can only be cured on direct appeal, nor has it issued any ruling that would preclude the way the double jeopardy issue was resolved in Petitioner's case.  *See Woods*, 135 S. Ct. at 1376 (reiterating that "clearly established Federal law" under § 2254(d)(1) means the holdings by the United States Supreme Court).  Because Petitioner has failed to show that the TCCA's denial of his double jeopardy claim was contrary to or an unreasonable application of clearly established federal law, his double jeopardy claim should be denied.

## C.    Ineffective Assistance of Appellate Counsel (Claim 3)

A criminal defendant is entitled to effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 393–97 (1985); *Williams v. Collins*, 16 F.3d 626, 634–35 (5th Cir. 1994) (explaining that the due process clause of the fourteenth amendment guarantees effective assistance of counsel for direct appeals).  When a federal prisoner proceeds under § 2254 on constitutional grounds of ineffective assistance of appellate counsel, the prisoner must satisfy the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. at 687.  *See, e.g.*, *Williams*, 16 F.3d at 635.  The prisoner must show that counsel's performance was deficient and that prejudice resulted from that deficiency.  *Strickland*, 466 U.S. at 687.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  While it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Id.*

Under AEDPA, the "more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Knowles v. Mirzayance*, 562 U.S. 86, 101 (2009) (citation omitted).  The "*Strickland* standard is a general standard," so, under AEDPA, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  The Supreme Court describes a federal court's review under § 2254(d)(1) of a state court's denial of a *Strickland* claim as "doubly deferential judicial review."  *Id.*  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter*, 562 U.S. at 101 (stating this in the context of how AEDPA is applied to *Strickland* claims)

Petitioner argues that appellate counsel should have raised the issue of the alleged double jeopardy violation on direct appeal.  The record reflects that appellate counsel raised several issues on appeal.  First, appellate counsel asserted "that the evidence is legally insufficient to support a finding beyond a reasonable doubt that he intentionally caused the deaths of Evan and Wilda Squires." *Almaguer*, 13-14-00312-CR, 2015 WL 5602267, at *1.  Appellate counsel also raised three issues relating to the trial court's refusal to grant Petitioner's motion for a new trial based on jury misconduct and the prosecutor's discussion of the law of the parties to the venire panel.  *Id.* at *4.

Given that any double jeopardy violation had been remedied by the dismissal of count one, and given that trial counsel had not objected to the dismissal of count one, it is abundantly evident why the state habeas court did not find deficient performance by appellate counsel or any

24

resulting prejudice from appellate counsel's failure to raise a double jeopardy issue.  Counsel is not required to raise issues that have little to no merit.  *See Knowles*, 556 U.S. at 122 ("With no Supreme Court precedent establishing a 'nothing to lose' standard for ineffective-assistance-of-counsel claims, habeas relief cannot be granted pursuant to § 2254(d)(1) based on such a standard."); *Robbins*, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.").

This Court must view the TCCA's denial through a doubly-deferential lens under AEDPA, and Petitioner fails to overcome this stringent standard of review.  *See Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is quite "different from asking whether defense counsel's performance fell below *Strickland*'s standard").  Accordingly, the TCCA's rejection of this claim was not an unreasonable within the meaning of AEDPA, and Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment (Docket No. 8) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED.  For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the § 2254 Rules instruct

that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding).   An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329.   As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's claims should be dismissed on their merits.   For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that these claims lack merit, nor are the issues presented adequate to deserve encouragement to proceed further.   Accordingly, Petitioner is not entitled to a COA.

## **NOTICE TO THE PARTIES**

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on March 1, 2018.

Peter E. Ormsby
United States Magistrate Judge